IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ESSEX INSURANCE COMPANY;** )<br>)<br>    **Plaintiff,** )<br>)<br>v.    )<br>)<br>**TINA BAYLESS;** )<br>**ALL STAR TAVERN, LLC;** )<br>**JAMES MONK, individually;** )<br>**JENNIFER MONK, individually;** )<br>**KENJI RAYMOND, individually;** )<br>**ALDO WATERS, individually; and** )<br>**LEISURE TIME PROPERTIES, INC.;** )<br>)<br>    **Defendants.** ) | Case No. 12-CV-226-JHP |

**OPINION AND ORDER**

Before the Court is Plaintiff Essex Insurance Company's Motion for Summary Judgment ("Essex" or "Plaintiff"), [Doc. No. 36]. After review of the briefs, and for the reasons stated below, Plaintiff's Motion for Summary Judgment is **GRANTED.**

**BACKGROUND**

**A. Procedural History**

On May 18, 2012, Essex commenced this action by filing a complaint in this Court, seeking a declaratory judgment from this Court regarding the rights and liabilities under an insurance policy issued by Essex to Defendant Tina Bayless. [Doc. No. 2].[1] On December 27, 2012, Defendants Aldo Waters and Leisure Time Properties, Inc. ("Leisure Time Defendants") filed a Motion to Dismiss, arguing that the Leisure Time Defendants should be dismissed from

---

[1] On July 20, 2012, Essex filed a Motion to Amend its Complaint, [Doc. No. 22], which the Court subsequently granted. [Doc. No. 25]. On September 12, 2012, Essex filed its Amended Complaint, referred to herein as "the Complaint." [Doc. No. 26].

this action because they have no interest in the outcome of the lawsuit. [Doc. No. 34]. Shortly thereafter, Essex filed a Motion for Summary Judgment, [Doc. No. 36], and Defendants James and Jennifer Monk ("the Monks") filed a Motion to Stay/Abstain, [Doc. No. 37]. On March 1, 2013, the Court denied the Leisure Time Defendants' Motion to Dismiss, [Doc. No. 34], and the Monks' Motion to Stay/Abstain, [Doc. No. 37]. [Doc. No. 49]. The Motion for Summary Judgment filed by Essex is now fully briefed and before the Court.

**B. LCvR 56.1**

Fed. R. Civ. P. 56(c) addresses what parties must do to support an assertion that a fact is or is not genuinely in dispute. But nothing in Rule 56 addresses the method by which parties make or respond to assertions of fact. This procedural dilemma has been remedied by this Court through the adoption of local rules regulating how parties are to make or respond to assertions of fact. LCvR 56.1(b) sets out the method by which movants are to make assertions of fact in support of a motion for summary judgment as follows:

> The brief in support of a motion for summary judgment (or partial summary judgment) shall begin with a section that contains a concise statement of material facts to which the moving party contends no genuine issue of fact exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies.

In similar fashion, LCvR 56.1(c) provides the method by which litigants opposing summary judgment are to respond to assertions of fact:

> The response brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the numbered paragraphs of the movant's facts that are disputed. All material facts set forth in the statement of the material facts of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the statement of material facts of the opposing party.

The purpose of these rules is primarily to aid the Court in determining what genuine disputes of material fact exist.

In their Response in Opposition to the Motion for Summary Judgment, the Monks contend that summary judgment is inappropriate, in part, because "genuine issues of fact remain." [Doc. No. 52, 1]. However, the Monks' Response brief fails to specifically controvert any of the facts Essex submitted in its properly included Statement of Material Facts, [Doc. No. 36, 3], as required by LCvR 56.1(c).[2] Accordingly, the Statement of Material Facts submitted by Essex in its Motion for Summary Judgment is deemed admitted.

## C.  Factual Background

### 1. Carter County Action

On October 31, 2011, the Monks initiated an action through the filing of a petition in the District Court of Carter County, Oklahoma, Case No. CJ-2011-305 (the "Carter County Action"), asserting various claims stemming from events allegedly occurring on April 14, 2011. In their Amended Petition, the Monks allege that Mr. Monk was an innocent bystander to a physical altercation between his friends and All Star Tavern employees, and, during the course of the altercation, was struck in the head by one of All Star Tavern's employees, causing Mr. Monk to fall to the ground and strike his head on the surface of the parking lot. The Monks' assert the following claims in their Amended Complaint: (1) Battery; (2) Infliction of Emotional Distress; (3) Negligence; (4) Infliction of Emotional Distress; (5) Respondeat Superior; (6) Premises Liability; and (7) Loss of Spousal Consortium.

### 2. The Essex Policy

---

[2] The Monks also failed to comply with LCvR 7.1(d), which provides that "[b]riefs exceeding fifteen (15) pages in length shall be accompanied by an indexed table of contents showing headings or sub-heading and an indexed table of statutes, rules, ordinances, cases, and other authorities cited."

Essex issued Policy No. MB00000698 to Tina Bayless d/b/a All Starz as named insured for the period of December 2, 2010, to December 2, 2011, which provided Commercial General Liability Coverage pursuant to Form CG 00 01 12 07 along with a variety of other forms and endorsements (the "Essex Policy"). The Essex Policy provides coverage for bodily injury and property damage liability, providing that Essex

> will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

[Doc. No 36, Ex. 2 at 11]. Insurance coverage under the Essex Policy for bodily injury and property damage applies only if "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' … ." [*Id.*] Further, the Essex Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [*Id.* at 24].

The Essex Policy contains an endorsement containing, in relevant part, an expanded definition of "bodily injury" and a number of exclusions from insurance coverage. Pursuant to the Essex Policy, "bodily injury" is defined in the following manner:

> "Bodily injury" means:
> 
> a. Bodily injury;
> b. Sickness;
> c. Disease; or
> d. Mental anguish or emotional distress arising out of a., b., or c., above;
> 
> sustained by a person including death resulting from any of these at any time.

[*Id.* at 42].

4

6:12-cv-00226-JHP   Document 58   Filed in ED/OK on 09/10/13   Page 5 of 9

The Bodily Injury and Property Damage Liability coverage provided by the Essex Policy is subject to the following exclusions:

This insurance does not apply to:

> **a. Expected or Intended Injury**
>
> > "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

[*Id.* at 12].

In addition, the Bodily Injury and Property Damage Liability coverage provided by the Essex Policy is subject to the following exclusion regarding liquor liability:

### LIQUOR LIABILITY EXCLUSION AMENDED

Liquor Liability 2.c. Exclusions, Commercial General Liability Coverage Form, Section I – Coverage, is replaced by the following and applies throughout this policy:

The coverage under this policy does not apply to "bodily injury", "property damage", "personal and advertising injury", or any injury, loss or damage arising out of:

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

1) Causing or contributing to the intoxication of any person; and/or

2) Furnishing alcoholic beverages to anyone under legal drinking age or under the influence of alcohol; and/or

3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages; and/or

4) Any act or omission by any insured, any employee of any insured, patrons, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol.

This exclusion applies to the entire policy.

[*Id.* at 13].

5

Further, the Bodily Injury and Property Damage Liability coverage provided by the Essex Policy is subject to the following endorsement regarding assault and/or battery:

**Assault and/or Battery Exclusion**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The coverage under this policy does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any insured, insured's "employees", patrons or any other person. Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision. Assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property. The sentence "This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property" is deleted from the Commercial General Liability Coverage Form, Section I. Item **2.,** Exclusions, **a.**

[*Id.* at 34].

Finally, the Bodily Injury and Property Damage Liability coverage provided by the Essex Policy is subject to the following endorsement regarding punitive or exemplary damages:

**PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION**

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY WRAP COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
NEW YORK CONTRACTORS COMMERCIAL GENERAL LIABILITY INSURANCE POLICY
BUSINESSOWNERS COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM

In consideration of the premium charged and regardless of any other provisions, this policy does not apply to punitive or exemplary damages.

[*Id.* at 45].

## DISCUSSION

As a general rule, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

## A.  Applicable Principles of Interpretation

As a threshold matter, the Court's exercises jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), and, consequently, Oklahoma law applies to the interpretation of the Essex Policy. Under Oklahoma law, insurance contracts are interpreted "in accordance with principles applicable to all contracts." *Mansur v. PFL Life Ins. Co.,* 589 F.3d 1315, 1319 (10th Cir. 2009). The contract is "construed according to the plain meaning of its language," and, if unambiguous, the court "interprets the contract as a matter of law." *Id.* "When an insurance contract is susceptible of two meanings ... words of inclusion are liberally construed in favor of the insured and words of exclusion strictly construed against the insurer." *Phillips v. Estate of Greenfield,* 859 P.2d 1101, 1104 (Okla. 1993). "I[t] is the expectations of the insured that control" when "the terms of the contract are unclear, or when the contract is

susceptible to two reasonable interpretations." *Western World Ins. Co. v. Markel American Ins. Co.,* 677 F.3d 1266, 1271 (10th Cir. 2012); *accord Mansur,* 589 F.3d at 1319 (Because "[a]n insurance policy is considered a contract of adhesion in Oklahoma," if the contract is ambiguous, it is "construed in favor of the insured.").

A commercial general liability insurance policy, such as the policy issued by Essex, "generally contains two basic duties—the duty to defend and the duty to indemnify its insured." *First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.,* 928 P.2d 298, 302–03 (Okla. 1996). The insurer's duty to defend is broader than the duty to indemnify, and arises whenever the insurer "ascertains the presence of facts that give rise to *the potential of liability* under the policy." *Id.* at 303 (footnote omitted and emphasis original). "[T]here *need not be a probability of recovery.*" *Id.* at 303 n. 14 (emphasis original). "[T]he insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the *possibility of a recovery* under the policy." *Id.* (emphasis original).

**B.  Coverage Under the Essex Policy**

Essex argues that it has no duty to defend or indemnify Defendants in the Carter County Action because the Essex Policy (1) does not provide coverage for intentional acts; (2) does not provide coverage for liability arising out of the provision of alcohol; (3) does not provide coverage for damages for emotional distress; and (4) does not provide coverage for punitive damages. The Court agrees.

It is undisputed that the Monks' claims all originate from a single alleged intentional act of battery committed by one of All Star Tavern's employees, which resulting in bodily injury to Mr. Monk. It is also undisputed that the clear language of the Essex Policy limits coverage to bodily injury caused by an "occurrence," which is defined as an "accident." Under Oklahoma

law, a battery, such as the one alleged by the Monks in the Carter County Action, does not constitute an "occurrence" under a CGL policy. *Sphere Drake Ins. P.L.C. v. D'Errico*, 4 F. App'x 660, 662-63 (10th Cir. 2001) (citing *Farmers Alliance Mut. Ins. Co. v. Salazar,* 77 F.3d 1291, 1297 (10th Cir. 1996) (applying Oklahoma law in discussing what constitutes an "accident" and holding that murder, in light of intentional nature of crime, was not an accident); *Penley v. Gulf Ins. Co.,* 414 P.2d 305, 308 (1966) ("an intentional or willful tort would negat[e] the existence of an accident" (quotation omitted))). As such, Mr. Monk's injuries were not caused by an occurrence pursuant to the terms of the Essex Policy, which provides coverage only for bodily injury resulting from an occurrence. Accordingly, Essex has no duty to defend or indemnify any parties insured by the Essex Policy in the Carter County Action.[3]

## CONCLUSION

In summary, the Court holds that Essex is under no duty to defend or indemnify under the terms of the Essex Policy. Therefore, Plaintiff's Motion for Summary Judgment is **GRANTED.** A separate judgment is entered herewith.

IS IT SO ORDERED this 10th day of September, 2013.

*[Signature]*
James H. Payne
United States District Judge
Eastern District of Oklahoma

---

[3] Even if Mr. Monk's injuries were caused by an occurrence, the Monks would nevertheless be unable to recover under the Essex Policy as a result of the exclusion in the Essex Policy. *See D'Errico*, 4 F. App'x at 662-63; *see also W. Heritage Ins. Co. v. Tuffy's Rest., Inc.*, CIV-05-1329-L, 2006 WL 3333844 (W.D. Okla. Nov. 15, 2006) (unpublished); *Scottsdale Ins. Co. v. Owl Nite Sec., Inc.*, 06-CV-0097-CVE-SAJ, 2006 WL 3742102 (N.D. Okla. Dec. 15, 2006) (unpublished).